# McCoy v. Klein, Appellant.

*Replevin—Evidence—Title to automobile—Prior business relations between parties.*

On the trial of an issue in replevin to determine the ownership of an automobile, the defendant is not entitled to introduce evidence as to prior business relations between plaintiff and himself, where such evidence has no possible relations to the issue under the pleadings.

Argued May 2, 1918. Appeal, No. 141, April T., 1918, by defendant, from judgment of C. P. Allegheny Co., Jan. T., 1917, No. 782, on verdict for plaintiff in case of John A. McCoy v. John W. Klein, with notice to W. J. Dible. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Issue to determine ownership of an automobile.

At the trial the jury returned a verdict for plaintiff.

On motion for judgment for defendant n. o. v., COHEN, J., filed the following opinion:

The subject of this replevin suit is the ownership of an automobile as between the parties hereto, the value of which, as fixed by the testimony, was $535. From the evidence it appears that the defendant, Klein, called upon the Stein-Williams Motor Company in Pittsburgh and stated that he could sell a certain automobile for the company, whereupon the company agreed to pay Klein $25 commission. The following day Klein brought the plaintiff herein as the customer or purchaser, when he (Klein) was told by the company that they could only pay him $15 commission, to which Klein agreed. When Mr. Stein, the salesman, was on the stand he testified that he thought he was selling the automobile to the plaintiff, McCoy, "but the books show," he said, "it was sold to Klein," and when the bookkeeper made out the bill he had before him the check given in payment. There

is no evidence whatever as to why he did so, or that he was told to do so. The salesman stated, however, that the bookkeeper had the check given in payment before him at the time, it being the usual custom, he testified, to call in the bookkeeper and hand him the check given in payment and tell him to make out a receipted bill. It was proven that the check given in payment for the machine was made by McCoy, the plaintiff, to the order of Klein, and by Klein endorsed to the company. There was some intimation by the salesman as to the reason why this was done, owing to the fact that he was not personally acquainted with either and thought it would be better to have both names on the paper.

McCoy, the plaintiff, swore that he bought the machine, and the defendant, Klein, swore that it was purchased by him. McCoy testified that Klein came to him the day previous to the purchase and told him of this particular machine and advised him to buy it. This corresponds in a measure with the testimony of Stein, the salesman, who stated that Klein had been in the establishment the day previous and stated that he had a customer, whom he could present. "We went," said McCoy, "the following morning, and bought the machine with two extra tires. I gave my check to the order of Klein in accordance with the request of Stein, the salesman." The plaintiff further testified that the defendant, Klein, never had any interest directly or indirectly in the car and never had a cent in the car, that he paid all the purchase-money himself; that because he could not personally run a car he allowed Klein to take the same into his possession, and that he also permitted Klein, in consideration of his driving the car for him, at times, to use the same for taking out "his girl" as requested by Klein to do. The car was demanded by McCoy from Klein and possession refused on the ground that he (Klein) had a debt or claim against the plaintiff, McCoy. There is nothing set forth in any of the pleadings as to the prior existence of such indebtedness or of any indebtedness,

wherefore the attempt by defendant to prove such at the trial was objected to and sustained.

McCoy testified that he knew nothing of the bill of sale having been made to Klein, and says that before the car was purchased the salesman and himself alone, the two of them, drove in it for over an hour, after which McCoy said he was perfectly satisfied with the machine. Klein testified that he borrowed this money from the plaintiff to pay for the auto, and further states, as follows (page 40) : "I went to McCoy and I says, 'Would you advance me the money to buy the auto' and that I would pay it back to him as soon as I was able to." He admitted he received the check from the salesman for $15 as commission, "for it was agreed between McCoy and myself that I could buy the car cheaper that way. They gave me a check for $15 and I said to McCoy, 'I still owe you the difference between $550 and $15, which is $535.'" (Page 41.) Such is the testimony of Klein.

How in the face of the promise to pay back to McCoy, as above, and the statement that he still owed McCoy $535, how this can be reconciled with his statement that he would pay it back as soon as able to do so, I am unable to comprehend. When asked (page 48) why the check for commission for $15 was not made payable to McCoy, he declined to answer.

In view of all these facts, and after due consideration of the further fact that the license was in defendant's name and the plaintiff's explanation of such, and that the possession was in defendant, with its corresponding reasons therefor as given by plaintiff, and considering also other minor incidents which might indicate title in defendant, we are all of opinion that they are not such as to justify a new trial in the light of the fact that all these subjects were submitted to the jury with directions as to their legal effect, if found to be true. [We are of opinion that the claim of defendant, growing out of prior business relationships alleged by Klein to have existed between the parties and which are not set forth in the

Opinion of Court below—Opinion of the Court. [70 Pa. Superior Ct.

pleadings, and which were not pertinent to the issue, could not have been considered and they were properly excluded as incompetent evidence.]

For these reasons we all think that the motion for a new trial should be refused. As to the motion for judgment non obstante veredicto, it is evident the same cannot be granted, because of material facts in controversy which were submitted to the jury, and binding instructions could not be granted at the trial in the face of such conditions: Delmos v. Kemble, 215 Pa. 410.

And now, to wit: January 3, 1918, the motion for a new trial, ex parte defendant, is refused, and that for judgment n. o. v. is overruled and dismissed, and judgment is now directed to be entered for plaintiff on the verdict on payment of verdict fee.

*Errors assigned* were (1, 2) in refusing to admit defendant's offer of testimony as to previous business relations between the parties and (3) refusal of motion for judgment for defendant n. o. v.

*B. H. Feldstein,* with him *J. Lee McKnight,* for appellant.

*Robert R. Elder,* for appellee.

OPINION BY ORLADY, P. J., July 10, 1918:

The defendant failed in making out his defense before a jury to which his contention was fully and adequately presented, in a charge to which no exception can be rightly taken. The disputed facts were to be disposed of only by a jury, and the excluded evidence had no possible relation to the issue as presented under the pleadings. The transaction was independent of former business relations, and the testimony was rightly confined to the question involved.

The judgment is affirmed, for the reasons given by the learned court below in overruling the motion for judgment non obstante veredicto.